Mark Allen James. Mr. Chavez. Good morning and may it please the court for defendant appellant Mark Allen James. My name is Hector Chavez and I'm joined by my colleague, Dane Ball, who will be handling rebuttal. I'd like to go into the constructive amendment issue first, and we believe that the government invited the jury to convict on an alternate basis that was not presented in the original indictment for three reasons. First, because the original indictment, by fair reading of its plain terms, clearly only describes an outsider conspiracy. Second, because the prosecution repeatedly affirmed and clarified this same indicted theory. And third, because the prosecution's invitation to the jury, in closing argument, that it could convict on an insider conspiracy ran counter to the theory of prosecution that had been presented to Mr. James for over three years. So to go into the record a little bit about what the indictment says and why it was clear that it was only an outsider conspiracy, we can look at the first six paragraphs of the indictment, where it describes who James and his partner were. We can look at the manner and means of the conspiracy from paragraphs 13 through 24. And in all these paragraphs, there's no suggestion, no hint that any HP salesman furthered the fraud that was charged here. In fact, in paragraph 14 of the indictment, it says that these purchasers posed as end use, misrepresented the end use. In paragraph 21, it describes how James's partners deceived HP and its sales partners about where the money came from, where it was going to. Then in paragraph 25 of the indictment, there's over 33 different overt acts alleged in furtherance of the conspiracy, none of which hint at any participation in the conspiracy by HP insiders or HP salesmen. Now, if all this weren't enough, over the years of the prosecution of the case, the government repeatedly reaffirmed the same theory. So for instance, when Mark James subpoenaed HP to get communications by HP salesmen to find out more about what they may have known about and what they may have approved, the government in a subpoena hearing over the motion to quash said, you know, your honor, we don't think any of this is relevant or admissible. In another pretrial hearing, the government represented that it acknowledged that emails by HP salesmen indicating their knowledge or approval of the sales, that that would be Brady evidence potentially favorable to the defendant. But also importantly, in the trial brief submitted by the government in order to explain the allegations of the indictment and explain the evidence of the conspiracy, it set out the list of who the co-conspirators were in the indictment. It's Mark James, his employee Neal Dater, and the so-called straw buyers, outside purchasers. Isn't it fair to say, though, that that defense counsel was not surprised by the government's reaction? My understanding from the government's brief, at least, is that this was gone over maybe in discussion prior to Vroidar, that if the defense pursues that, that they've been aware of the defense interest in the activity, and it's not some guy, I forget what town they picked out, some guy in Toledo that has to know about it, has to be the administration, and basically informed the court and defense counsel what would happen if that was the evidentiary presentation by the defense or the argument. So doesn't that, in a way, at least acknowledge that the government was only reacting to what the   Well, I think it's fair to say that the government was, indeed, making the legal argument, supported by evidence, perhaps, that it's not enough for some guy in Toledo to know who are the other people you were talking about. So it does seem to me that you were fully aware that if you went one way, the governor was going to respond. I disagree. What the government had been arguing in Vroidar and in the challenges over the jury charge was that, hey, the approval of one HP salesman isn't enough. And that's why the government argued against any condemnation instruction being included in the jury charge. But HP's a corporation, and corporations act through their agents. So the defense was entitled to present this theory. The government never, in these discussions about was there approval, was there knowledge, never hinted at the HP salesman being part of the conspiracy. After all, in the government's brief here, in its factual recitation, and even in other parts of the opening argument, it could have argued and did argue in other parts, hey, there wasn't knowledge. There wasn't approval. But that is drastically different than saying that the salesmen were co-conspirators themselves. After the defense had spent six days eliciting testimony and trying to establish that HP salesmen knew, the government in closing argument tells the jury, if HP salesmen knew, that means they were co-conspirators. I think Your Honor may have also been alluding to something mentioned in the government's brief about, you know, we undertake this theory at our own peril. If you look at the record, what they're undertaking at their own peril is the difficulty of showing condemnation. But that's very different than saying we accept the peril that you will now twist the indictment to introduce a new conspiracy theory. Now, I think it might be helpful to highlight just how different these two conspiracy theories are. Under the terms of the original indictment, where you had this posing, misrepresenting, deceiving, what you have is James and his partners making fraudulent misrepresentations to their counterparts at HP, the HP salesmen. But if HP salesmen are part of the conspiracy, as the government invited the jury to conclude, well, those communications are no longer fraudulent, right? There's no intent to defraud. So where's the predicate fraud taking place? It's all behind HP's doors now. Misrepresentation might be that the salesman is telling another department, yeah, these deals are kosher. You know, start shipping the products. It might be a fraud by omission where they're passing along the order form and they should have spoken up. But these are not the misrepresentations and this is not the misrepresentation. It's a misrepresentation of what was presented in the indictment and it's a far cry from what the government reaffirmed and excluded in its pre-trial comments and even in its opening arguments as to what the ambit of the conspiracy would be. And you objected to that at the time, did you not? There was a contemporaneous objection and the counsel, as per the court's instructions, then further developed that after the break and there was also an objection request for a curative instruction and that, too, was denied. Why couldn't you respond to that? I mean, I must be missing the nuance here, but why couldn't you have said, okay, if that's their theory, then we weren't agreeing with us? Because under the invitation extended by the government, it said if HP salesmen knew, then they are co-conspirators themselves. They are in on it. We can't agree to that because that's in furtherance of a conviction. It's inviting the jury. Well, it depends on how you consider it. What they consider part of the fraud is what could be part of the condoning. You see what I'm saying? What I would say is that you're inviting the jury to say, regardless of knowledge or if there was knowledge, that's all the more reason to find a conspiracy that he's guilty of. But it's not the conspiracy that's embraced. That they charged. That they charged. That's embraced by the indictment. And that, of course, is the inquiry that should take place here in a constructive amendment issue. Now, when the indictment says conspired with others unknown, what does that mean? The short answer is that it could mean other outside purchasers. We already know that the phrase other persons as set forth in this indictment cannot include any HP insiders. That would not make sense in light of the other paragraphs of the indictment saying how they were deceived. It also doesn't comport with how the government clarified or, if you believe, narrowed the terms of the case in its pretrial statements and its trial brief where it excluded any HP insiders from the conspiracy. Well, what was the evidence underlying your condonation theory that led them, led the government to respond in that way? There were a number of things, but some highlights include the fact that HP salesmen often gave discounts to resellers, that HP internal policies made it practically impossible for a salesman to mistakenly give discounts. There were even written communications from James and his partners to the salesman stating that these items are for resale and I certify I'm a reseller. There were even articles within HP finding that this HP salesman must have known that this was going on. And even when the undercover agent who was helping HP in this investigation, when he decided to make representations to James and James's partners, he told the informant, tell them that I'm another HP salesman who will do anything. I will get them anything they want. And if he's trying to blend in like another HP salesman, well, James believed that this is the same gig that's going on. These salesmen are willing to approve these sales. So because the invitation was extended to the jury to indict on this alternate theory, we don't even have to know what the jury ultimately decided as an sterone. But because there was an alternative theory presented to them, they could have convicted on either. There was a constructive amendment requiring a reversal here. If there's no further questions on that, I'd like to jump to the juror incompetence issue. As we know and as we highlighted in our brief, prior to verdict and after verdict, the juror admitted and then fulsomely demonstrated a hearing impairment. So why didn't you strike her? We did move to strike. Because. But I'm sorry? Peremptory strike? Well, we believe that a motion to strike for cause was sufficient and that was denied. And the issue was plainly raised before the judge. So for two reasons, we do not believe that the district court applied the correct legal standard. And then the judge, you know, when she's writing her witness box, was told to raise her hand if he couldn't. She couldn't understand things. And apparently in the post trial at some point when the jury polling occurred, she she doesn't hear the question at first, but then she answers it. So what? What evidence or suspicion have you got that you couldn't hear? First of all, in the record, the many instances of the juror explained her hearing impairment or inability to answer even direct questions posed to her. But the problem with the reasoning and the standard employed by the district court is that it excluded even non-juror evidence that could have been presented in an evidentiary hearing, even under the cases relied on by the government. Tanner, Weaver, Webster, in all those, there were at least to find out more about the gravity of the problem. So defense was not allowed the ability to pursue affidavits or testimony from, for instance, the case manager who spoke directly to the juror and would have knowledge about her inability to answer from alternate jurors who didn't participate in the deliberations. Other affidavits from court observers or counsel. There seems to be some dispute or uncertainty as to whether there was actually whether you actually raised a specific objection. Can you point us to anything in the record where the objection was raised? I'm not talking about the comments from the district court. I'm talking about your specific objection regarding this juror. We rely on the objection that is as memorialized in the transcript. We don't know. But very close to when trial occurred, defense counsel, apparently the government, apparently the court and the clerks helping the court write its order all remember the same thing. And the court even gave its reasons for the denial. Just mysteriously, it doesn't appear in the transcript. We do not find it a transcript, but we believe and we know that it is in the record. Are you contending that it was an objection made in open court by defense counsel during the proceedings? That is our position. No further questions. We'll reserve the rest of our time for that. Thank you. All right. Thank you, sir. Okay, Ms. Wilson. May it please the court. Three times the district court rejected that a constructive amendment had occurred. It found that the isolated remarks during closing argument didn't introduce a new theory or an alternative theory, and it didn't modify an essential element of the offense. Moreover, contrary to what Mr James is representing, at no time did the government invite the jury to convict Mr James on an alternative or new theory. Instead, the evidence throughout the indictment and the closing argument were consistent. There was one conspiracy. James directed straw buyers to obtain massive big deal discounts by misrepresenting the products or for their internal use and would not be resolved. As the district court found, the government was responding to James's condemnation defense and clarifying what would have to be established to show that Hewlett Packard knew the government did this by summarizing the overwhelming evidence using James's words, his actions, his emails, financial documents and other materials. The government's point during these isolated comments. What is that? Was that if an HP salesman had known about the fraud, it didn't put HP the corporate entity on notice or mean that HP condoned the fraud. As Judge Southwick pointed out, this particular issue was discussed right before trial at the April 29th hearing. And the reason this is so obvious is common sense dictates that Hewlett Packard wouldn't consent to being defrauded. There was no evidence that the salesmen were in on it. In his brief, James references an email, but that was from 2004. The time of this conspiracy is from 2009 through 2011. And I'll explain that a little bit further in a minute. But there was no evidence that the salesman knew. What the evidence showed is that every time HP discovered fraud was going on, a big deal was shut down. If HP was in on it, think about this logically. It would defeat the whole purpose of the big deal. As the brief points out, and as people testified, these big deals were for two reasons, primarily. One, to develop new business or to expand existing business. So they gave massive discounts. In this case, they totaled in millions of dollars. And the profits, if you will, were either nonexistent or nonexistent, rather, or at the razor's edge. The CD partner, Mark Dean, testified that the rule number one is you cannot resell. And he would not have done a big deal if he had known about that. And, Your Honors, that can be found on pages 1989 through 1990. He only received a $2,000 commission from a $1.1 million big deal. The straw buyer, Kennett, however, received $40,000. So that shows you how the big deals worked. And that can be found at the CD partner. So, again, the government's point was just to highlight that if a rogue salesman had known about it, and, again, there was no evidence to that effect, that would not mean that H.P. was in on it. Mr. Wilson, when would a constructive amendment occur under your view? You point out that the closing argument was contingent, maybe, is the word. Were there such a person, that person would be a co-conspirator. If they had actually identified someone and argued that person was part of the conspiracy, if you had said, well, they've identified Joe Smith, at most he's a co-conspirator, does that change it from the sort of contingency that was in the argument? Does that make it more of a problem? Well, I think what's a little bit different here from a lot of the authorities that have come out of this court is, for example, in Mr. James' authority, Doucette and many of the others, oftentimes there's evidence that goes beyond the indictment. Here, there was no evidence. Other times, as in Doucette and some of these other cases, the jury instructions go astray. And that didn't happen here either. So what we had here was an argument. A prosecutor pulled something out of the air that had never been discussed, and there was no evidence to that effect. It certainly clutters the record more, but they could respond to that in rebuttal. But I think, as this court has said, these cases are very much fact-dependent. And here, the facts are such that no constructive amendment occurred. And what's important to remember here is, James is not challenging the sufficiency of the evidence. He's not challenging whether the jury instructions were correct. And in addition to tracking the indictment and the applicable law, the jury was specifically instructed that the only person on trial was James. And that can be found at 832-839-40. And the jury was also instructed, both at the beginning of trial and at the end of trial, that an attorney's statements are not evidence. And, of course, this court presumes that a jury follows its instructions. Did the government make any comment on the record regarding the request for a curative instruction? Well, actually, the judge responded immediately, saying that she wasn't going to give an instruction to that effect, and talked about some of the instructions in the past, which I think she was referring to the jury instructions. Does that answer your question? But the government . . . So I hear you saying that the government did not respond one way or the other as to whether there should be a curative instruction. No. The record is a very quick dialogue between James' counsel and Judge Rosenthal. And just to be clear, James, as I said, wasn't lured into anything. He made a conscious decision to pursue this defense. And the overwhelming evidence negated the condemnation defense. And I think it's important just to highlight a few points there. He was warned in 2004 with his InTouch corporation that he could not resell Hewlett-Packard products. The next year, 2005, he approached HP on the Europe side, and he had a new company, Romer Media, and wanted to do big deals. And HP said, absolutely not. So why would you do this? And to hide his identity, he recruits these straw buyers. And he does so, as I said, to hide his identity. And if you look at the e-mails, and we cited this many times in the brief, he says things to the effect of, loose lips cost lives. It's very, very clear he knows what he's doing. There's also recorded conversations that the jury had the opportunity to hear with incriminating statements. And, of course, he admitted his culpability at the time of his arrest, which can be found on page 200879. To be clear, just on a couple of what I would consider these diversionary tactics, the tax documents, it's very important for this court to understand that Kinnett, who had a resale business, that's what his business was. He was in the ticket resale business, and ironically, and perhaps sadly, his number one client was Hewlett Packard. So these rabbit trails about resale in relation to him, he specifically testified that he never told Dean, who was his contact through the tier two distributor, he never told him that he was a reseller. And Dean talked about how customers routinely require the removal of sales tax so that they can handle it on their own. That's not unusual at all, dealing with those businesses. Turning to the post-verdict complaint, there is absolutely no evidence in the record that a motion to strike occurred. The record is seamless about moving to strike jurors, and the government steadfastly maintains that that never occurred. The government did not raise that in response to the motion for new trial, simply because that Vordire occurred on 4-29, and when he filed his motion for new trial, that was May 16th. So some time had passed, and clearly you're preparing witnesses, defending, doing opening arguments, closing arguments, that the government just was, you know, didn't have the benefit of the record. And it's very clear that what happened, according to the record, and of course, it's his burden to bring forward the proper record, is during Vordire, the juror's hearing was discussed, and the district court determined she was competent. She specifically asked her. James often refers to the juror saying something to the effect, sometimes I have, I believe it, sometimes I have trouble with, but that's the point. The word is with. She never answers it. We don't know if that's the legalese. She doesn't have other problems in her state, but she never says that it's her hearing. Also, as the court pointed out, not only did he not move to use a peremptory, but he specifically agreed to the panel. When they saw the panel, both parties agreed to that, and that's on page 1483 through 98. And as the court pointed out, the jury had been instructed to alert the court if they had trouble seeing or hearing the evidence. Witnesses, of course, and attorneys were to use the microphone, and she was, of course, seated closest to the witness box. But what's real also important is that during the discussion and dismissal of the alternate jurors, James never objected. He never said, Please remove juror number one. Let's get rid of her. Well, moving to strike is enough. He did not move to strike. Judge Rosenthal says Defense Council moved to strike juror one for cause. The court denied the motion to and I understand that. But with all due respect, the record does not support that. I think what happened was she relied on James. James filed a motion, and she trusted his representation. Well, I trust what Judge Rosenthal wrote. How about that? Well, with all due respect, it is nowhere in the record. But judges don't normally, you know, if you don't get deaf jurors very often, she's not deaf. She's hard of hearing. Oh, right. Pardon me. I don't mean to be insensitive. The point is it doesn't come up very often. So you're thinking that the judge doesn't remember or didn't inquire or didn't have a footnote here. You know, I don't remember this happening, but this is what Defense Council said, and I'm assuming it arguendo. But even if, and we would continue to disagree, but even if they had moved to strike, they were affirmatively accepted the panel before the trial started. Also, when they were discussing, how many times do they have to object to preserve the objection? Your Honor, with all due respect, I'm just gonna have to disagree with that because you can disagree. But I'm saying if you if you move to strike a juror and and the court disagrees so the juror goes on the panel and then the you know, at the end of that colloquy sometime before trial starts, the court says, Does everybody agree? What do you have to do? Do you automatically waive that objection? Assuming that it's been made, do you waive that objection by saying, Yes, we agree. Why can't you rest on the objection that you've already made? Well, when it came to dismissing the alternate jurors, they did not advance that either. They did at the end of the trial. Pardon me? At the end of the trial. Correct. And said that they were fine with once again, fine with the court's normal procedure, which would leave juror one intact. But most importantly, what happened here is they're complaining post conviction. When the juror was pulled, they just sat there. James was convicted and juror number one was pulled. That's the heart of their complaint, of course. But they sat there and they waited until the jury had been dismissed. And what's ironic about that is in their motion for new trial, they had with great clarity all these things about juror one, which, of course, had occurred from 4 29 forward, what supposedly did or did not happen. But the day before, they then say, Well, they don't have the benefit of the record, but they think that this is what happened. But regardless, they're relegated to a post verdict posture, and the post verdict posture is is a high burden, and it's very unfavorable to them for all the reasons discussed in in the brief, including the 606 B. And in this particular case, there this not only this court, but the U. S. Supreme Court and other circuits have held that hearing and hearing issue is an internal matter. In other words, it is not something that you make a post verdict inquiry as opposed to an external influence on a jury or something to that And here, Judge Rosenthal, in addition to following the law, determined, and, of course, she was in the best position to do so, that neither a hearing or a new trial was warranted. The juror had confirmed, confirmed, excuse me, confirmed during broad are that she'd be able to hear, and she never indicated otherwise. Wasn't there some kind of accommodation made that this juror was outside the jury box closer to the proceedings? Correct. That's undisputed. Yes. And James acknowledged during the discussion about the alternates that juror one hadn't raised a problem. And just and Judge Rosenthal, after observing the juror for six days or whatever the trial was, she attributed the slight hesitation in answering because she was pulled first and probably confused about the process. She also rejected the same argument in the bond motion. And by then, the complaint had mushroomed from James's great concern post verdict about juror one to now a patent hearing impairment. In actuality, what his position is, is really an 11th hour attempt to avoid a waiver and get a new trial. And as Judge Rosenthal found, under no circumstances was that appropriate. And unless the court has additional questions, the government will yield the remainder of its time and ask for an affirmative. Thank you. All right, Mr Ball. I'd like to pick up right where Judge Jones left off on the juror one issue. There was a motion to strike. If there wasn't a motion to strike, we wouldn't have said so the day after the trial in our motion. What's most interesting about that is all we said in our motion was we made a motion to strike. It's the district court who independently recalled the rationale and reasoning behind her denial. So I don't think there's any question from this record. And after all, her findings of fact are part of the record on appeal. And if that truly were an issue about the comparison of that ruling to the transcript, the government could have moved for a rule 10 correction. I'm still a little bit confused about how this came about, though, in the modern day of all sorts of fancy court reporter apparatus, including recordings of the court reporter can use and, of course, being on the spot to put down every word that's said. I mean, has there been any effort on your part to examine the transcript to see, I mean, was there just some kind of missing pages in the transcript? Or how possibly could this have happened that an objection was made during the proceedings in open court? Again, I'm repeating myself. Was there some kind of a gap or something or some kind of glitch in the recording? And the truthful answer, Your Honor, is I don't know. I've spent a lot of time reviewing that transcript because I remember the objection. And I don't see missing pages. I don't know if this, I do know that this happens. I don't know if the court reporter left the room for five minutes. I don't know if we came back in. It's chaotic in jury selection, needless to say. That's the exact reason why I would say we didn't move on a preemptory strike. You know, you've got a trying to scribble things down. Uh, and so I don't know the answer to your question, but the district court recalled it like we did on the government had four opportunities below to disagree. Um, with that finding, I want to address just a first. You know, we're missing a step here under Rule 606. All we asked for below was an evidentiary hearing. We didn't say, Your interview juror number one. That's all we want. And that's all that will 606 be if it applies. And here it doesn't under Sotelo applies to. So there was a whole another set of evidence that we were entitled to submit to the court on this hearing issue. We could have interviewed alternative jurors. We could have interviewed the court staff, the case manager. So so there is a on constructive amendment. I don't have time to address every single point that Miss Wilson made. But, you know, this response by the government is very common in constructive amendment case. We were just responding to the defense. Well, of course, that's the same as in Doucette, as in Adams, as in Chambers, as in Sterling. That's what happens. You have an indicted theory, a factual basis that describes that theory. The defense rebuts it, I would say, in this case, overwhelmingly, the government has to react. And what does it do? It broadens its theory. It invites an alternative theory. And this this idea that this was just an if a condition precedent, a hypothetical. Well, hypotheticals are very powerful. And in one sentence and then a minute long explanation by illustration, it was a broader theory that swallowed the entire defense. I know because I spent six days putting on the case that the insiders knew and then was surprised to hear. Well, that under this indictment, they're just co conspirators. So if the panel doesn't have any more questions, I think Mr Chavez, uh, actually one last point. Miss Wilson has said we don't challenge the jury instructions. Well, that's not true, and it misunderstands a constructive amendment argument. We absolutely asked for a curative instruction, and it was denied. So the instructions are correct as a matter of law in the abstract. But when you change from the indicted theory to a constructively amended broader theory, the instructions are no longer correct. And it answers Judge Jones question. Why didn't you just argue that in rebuttal? If they're co the unaltered jury instructions after not getting a curative instruction because the new theory was within those instructions. Okay. Thank you, sir.